**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LORI LYNNE HOFF**, <br><br> Plaintiff, <br><br> v. <br><br> **CAPITAL BRANDS, LLC,** *et al.*, <br><br> Defendants. | Civil Action No. 21-16215 (ZNQ) (RLS) <br><br> **OPINION** |

**QURAISHI, District Judge**

      **THIS MATTER** comes before the Court upon a Motion to Exclude Plaintiff's Expert and for Summary Judgment filed by Defendants Capital Brands, LLC and NutriBullet, LLC (collectively, "Defendants"). ("Motion, ECF No. 56.) Defendants submitted a brief in support of the Motion ("Moving Br.", ECF No. 56-2) and a Statement of Facts (DSOF, ECF No. 56-3). Plaintiff Lori Lynne Hoff ("Plaintiff") filed a brief in opposition to the Motion ("Opp'n Br.", ECF No. 57), a response to Defendants' Statement of Facts (ECF No. 57-1), and a Statement of Additional Facts (PSOF, ECF No. 57-2). Defendants filed a reply. ("Reply", ECF No. 58.)

      The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT Defendants' Motion.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

      This is a product liability case arising from Plaintiff's use of a NutriBullet 600 blender. Plaintiff brings this action under the New Jersey Product Liability Act. (DSOF ¶¶1-2, PSOF 1.)

1

On February 17, 2020, Plaintiff attempted to make celery juice in a NutriBullet 600 blender (the "blender"). (PSOF ¶2.) Plaintiff combined water and chopped celery into the blender cup and did not exceed the max fill line. (DSOF ¶9, PSOF ¶2.) After inserting the ingredients, Plaintiff sealed the blender cup by connecting it to the extractor blade, then inverted the cup/blade assembly and inserted it into the power base. (DSOF ¶10.) The blender began to run, and Plaintiff started counting to ten. (*Id.* ¶11.) Plaintiff testified that her typical practice when blending celery juice was to never let it run "for more than ten seconds at a time." (*Id.*) Plaintiff was not touching the blender while it was running, but once it approached ten seconds of runtime, she began to reach out with her hands to stop it. (*Id.*) Before her hands reached the blender, and before she counted to ten, the blender "exploded." (*Id.*)

Plaintiff described hearing "a large bang," and feeling the celery juice/water contents splash onto her face and eyes, temporarily obstructing her vision. (*Id.* ¶12.) Once Plaintiff wiped the contents from her eyes, she saw that her pinky finger was cut and bleeding. (*Id.*) Plaintiff has "limited memory" as to what happened after the blender exploded but testified that she became dizzy and collapsed to the ground. (*Id.* ¶13.) Sometime after the incident, Plaintiff went to the emergency room for treatment. (*See id.* ¶14; ECF No. 56-5, Ex. J.)

Plaintiff's expert, Derek King ("King"), M.S., P.E., inspected the blender and the base following the incident as well as an exemplar NutriBullet 600. (*Id.* ¶33.) King testified that it was his expert opinion that over pressurization caused the blender cup to separate from the base. (ECF No. 56-5, Ex. H, T80:25-81:18.) King explained that, in his experience, there are three ways a blender could become over pressurized: excessive run time, blending hot ingredients, and blending carbonated ingredients. (T81:6-18.) Because Plaintiff testified that the contents of the blender were room temperature when the blender exploded, King agreed with defense counsel that use of

hot ingredients and excessive run time could be ruled out as the cause of over pressurization. (T:101-18-23.) King proposed that a safety pressure relief mechanism such as a pressure relief plug or valve would vent whatever the source of pressure is but that he is not sure which mechanism would have been effective in preventing Plaintiff's accident. (T87:5-12, 102:8-16, 106:23-107:2.)

Defendants' expert, Christopher J. Brand, inspected the subject blender and tested an exemplar NutriBullet 600 blender in an effort to recreate the incident using the same ingredients as Plaintiff for the same duration of time. (*Id.* ¶¶55-56). Brand's ample testing of the blender did not result in an explosion, separation of the plastic cup, or any expulsion of the blender's contents. (*Id.* ¶57.) In Brand's opinion, Plaintiff did not use the blender in accordance with the warnings and instructions. (*Id.* ¶71.)

Plaintiff filed a one-count Complaint in this Court on August 28, 2021, alleging that Defendants are liable for her injuries based on a design defect theory under the New Jersey Products Liability Act, ("NJPLA"), N.J. Stat. Ann. § 2A:58C-1 *et. seq.*[1] (ECF No.1.) Defendants filed an Answer (ECF No. 8), and the parties completed paper discovery and attempted mediation but were unsuccessful (ECF Nos. 26, 31). The parties proceeded through discovery until they were sent to arbitration in 2024 (ECF No. 48). An arbitration award was issued on August 12, 2024, and Defendants requested a trial de novo. (ECF No. 49.) Defendants filed the instant Motion on October 31, 2024. (ECF No. 56.)

## II.   SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are diverse, and the value of the controversy exceeds $75,000.

---

[1] The Complaint's single count also asserted underlying theories of manufacturing defect and failure-to-warn. Plaintiff expressly withdrew these theories in her opposition brief. (Opp'n Br. at 19.)

### III.  LEGAL STANDARD

#### A. *Daubert* Motion

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Federal Rule of Evidence "702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (internal citations omitted). For expert evidence to be admissible under Federal Rule of Evidence 702: "(1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge [i.e., reliability]; and (3) the expert's testimony must assist the trier of fact [i.e., fit]." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010) (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008)). In applying Rule 702, "a trial judge acts as a 'gatekeeper' to ensure that 'any and all expert testimony or evidence is not only relevant, but also reliable.'" *Pineda*, 520 F.3d at 243.

"[A]n expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 742 (3d Cir. 1994) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). However, "an expert's bare conclusions, unsupported by factual evidence are an inadmissible net opinion." *Faragalla v. Otundo*, 626 F. Supp. 3d 783, 786 (D.N.J. 2022) (citation and internal quotation marks omitted); *H.M. ex rel. B.M. v. Haddon Heights Bd. of Educ.*, 822 F. Supp. 2d 439, 448 (D.N.J. 2011) (An "expert's bare conclusions are not admissible under [the fit requirement] of Rule 702 of the Federal Rules of Evidence.") (alteration in original and citation omitted).

#### B. Summary Judgment Motion

Rule 56 provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

4

law." Fed. R. Civ. P. 56(a); *see also Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine disputes of material fact exist).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 248–49. The summary judgment standard, however, does not operate in a vacuum. "[T]he judge must view the evidence presented through the prism of the substantive evidentiary burden," *id.* at 254, and construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

### IV.     **DISCUSSION**

Defendants move to exclude certain opinions by Plaintiff's expert under *Daubert* and Rule 702 of the Federal Rules of Evidence. Defendants further contend that, if King's report is excluded, summary judgment should therefore be granted because Plaintiff cannot sustain a

product defect claim without expert testimony. (Moving Br. at 2, 16.) Furthermore, Defendants argue that Plaintiff cannot otherwise prove causation. (Moving Br. 22.)

The Court will first discuss Plaintiff's design defect claim and the governing law.

### A. DESIGN DEFECT CLAIM

Plaintiff asserts a design defect theory of liability under the NJPLA. Three causes of action exist under the NJPLA: design defect, manufacturing defect, or failure to warn defect. *See Roberts v. Rich Foods*, 654 A.2d 1365 (N.J. 1994). A design defect theory requires a plaintiff to demonstrate that "(1) the product was defective; (2) the defect existed when the product left the hands of the defendant; and (3) the defect caused the injury to a reasonably foreseeable user." *Indian Brand Farms, Inc. v. Novartis Crop Prot. Inc.*, 617 F.3d 207, 225 (3d Cir. 2010) (quoting *Jurado v. W. Gear Works,* 619 A.2d 1312, 1317 (N.J. 1993)).

"The determination of whether a manufacturer/seller defectively designed a product involves a 'risk-utility analysis' that seeks to balance the magnitude of 'the danger posed by the product' against the social utility attained by putting the product on the market." *Kemly v. Werner Co.,* 151 F. Supp. 3d 496, 505 (D.N.J. 2015) (quoting *Truchan v. Nissan Motor Corp. in U.S.A.*, 720 A.2d 981, 985 (N.J. Sup. Ct. App. Div.1998)). New Jersey courts use a seven-factor test to evaluate a product's risk-utility, but "the prevalent view is that, unless one or more of the factors might be relevant in a particular case, the issue on which most claims turn is the proof by plaintiff of a 'reasonable alternative design . . . the omission [of which] renders the product not reasonably safe.'"[2] *Appleby v. Glaxo Wellcome, Inc.*, Civ. No. 04-0062, 2005 WL 3440440, at *6 (D.N.J.

---

[2] Those factors include: (1) the usefulness and desirability of the product; (2) the likelihood and seriousness of injury; (3) the availability of a substitute product; (4) the manufacturer's ability to eliminate the danger without impairing the product's utility; (5) the user's ability to avoid danger by due care; (6) the user's anticipated awareness of the danger considering general public knowledge or the obvious condition or the existence of suitable warnings or instructions; and (7) the feasibility of the manufacturer's spreading the loss by setting the price or carrying liability insurance. *Johansen v. Makita U.S.A.,* 607 A.2d 637, 642–43 (N.J. 1992).

6

Dec. 13, 2005) (quoting *Cavanaugh v. Skill Corp.*, 751 A.2d 518, 522 (N.J. 2000); *see also Mays v. Gen. Building Corp.,* Civ. No. 11-5836, 2013 WL 1986393, at *6 (D.N.J. May 10, 2013) ("In order to succeed on a design defect claim, a plaintiff is 'required to prove that a practical and feasible alternative design existed that would have reduced or prevented [his or her] harm.' ").

To make this showing, plaintiff may rely on: (1) direct evidence, such as the testimony of an expert who has examined the product or offers an opinion on the product's design; or (2) circumstantial evidence of a defect such as, "proof of proper use, handling or operation of the product and the nature of the malfunction, [which] may be enough to satisfy the requirement that something is wrong with [the product]." *Lauder v. Teaneck Volunteer Ambulance Corps.*, 845 A.2d 1271, 1277 (N.J. Super. Ct. App. Div. 2004). Where a factfinder must employ "scientific, technical, or other specialized knowledge," use of expert testimony is required to assist the trier of fact "in understanding the mechanical intricacies of the instrumentality and excluding other possible causes of the accident." *Jerista v. Murray*, 883 A.2d 350, 364 (N.J. 2005); *see also Mays v. General Binding Corp.*, Civ. No. 11-5836, 2013 WL 1986393, at *18 (D.N.J. May 10, 2013) (quoting *Lauder*, 845 A.2d at 1277).

Here, the dispute on this Motion is Plaintiff's showing as to causation. To that end, Plaintiff secured the expert opinion of King, a mechanical and electrical engineer, to opine on the cause of her alleged injury. King produced a report that concluded, in part, that the incident was caused by over pressurization in the blender cup and that the blender contained at least one design defect—the lack of a safety pressure relief mechanism—and proposed two alternate designs: a timer or a pressure relief plug or valve. (Ex. B. at 21). The Court will now turn to Defendants' challenges to King's opinions.

**B. *DAUBERT* MOTION**

In the present case, Plaintiff's theory of design defect liability hinges upon King's expert testimony as to an alternate design. Because the Court on summary judgment may only consider admissible evidence, the Court will address, at the outset, Defendants' *Daubert* Motion and determine whether King's opinions are admissible. Defendants specifically challenge King's proposed automatic timer and pressure relief alternate designs.[3] For reasons to be shown, the Court will **GRANT** Defendants' *Daubert* Motion.

      1.      <u>Whether King's Automatic Timer Design Would Assist the Trier of Fact</u>

Defendants argue that King's opinion on a proposed alternate design in the form of an automatic timer is not relevant information that would assist a jury. An expert's opinion is relevant, or fits the issues in the case, if it would "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "[E]xpert evidence which does not relate to an issue in the case is not helpful." *U.S. v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010).

In his expert report, King opined that implementing a one-minute automatic timer would be a way to mitigate pressure buildup "in cases where run time is a factor." (ECF No. 56-5, Ex. B. at 21.) King, in response to being asked whether "implementing a timer that would shut the unit off . . . within one minute" is irrelevant *in this case*, King stated "based on [Plaintiff's description, that's correct . . . she would not have needed a motor timer." (T86:15-25.) Defendants therefore argue that King's opinion as to a proposed automatic timer design does not "fit" the facts of the case and it should therefore be excluded.

The Court agrees with Defendants and finds that King's opinion as to an alternative automatic timer design is unrelated and not sufficiently tied to the facts of the case based on the

---

[3] Defendants do not challenge King's qualifications as an expert.

facts as stipulated by the parties. As King admitted, an automatic timer is relevant to instances where run time is a factor. Based on Plaintiff's own testimony as to events leading up to her alleged injury, run time is not a factor in this case and the Court therefore finds that King's opinion as to an automatic timer design would not assist the jury.

        2.        <u>Whether King's Proposed Pressure Relief Design is Reliable</u>

Defendants separately argue that King's pressure relief design is also unreliable. (Moving Br. at 8.) Reliability demands that the testimony be "based upon the methods and procedures of science rather than on subjective belief or unsupported speculation" and that the expert have "good grounds for his or her belief." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (internal citations omitted). In the case of a design defect and whether a product could have been designed more safely, a plaintiff "must prove under a risk-utility analysis the existence of an alternative design that is both practical and feasible." *Sakolsky v. Genie Indus.*, Civ. No. 15-6893, 2021 WL 3661398, at *7 (D.N.J. Aug. 18, 2021) (quoting *Lewis v. Am. Cyanamid Co.*, 715 A.2d 967, 980 (N.J. 1998)). Thus, the issue is whether the method King used in reaching the alternate design is reliable.

In the context of expert testimony proffered by an engineer, the Supreme Court made clear in *Kumho Tire* that the application of reliability and relevancy applies to engineers and that the "law grants a district court . . . broad latitude when it decides how to determine reliability." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141–42 (1999). The Supreme Court emphasized that "[e]xperts of all kinds tie observations to conclusions through use of . . . 'general truths derived from . . . specialized knowledge." (*Id.* at 148 (quoting Hand, Historical and Practical Considerations Regarding Expert Testimony, 15 Harv. L. Rev. 40, 54 (1901)). Engineering testimony, however, rests upon scientific foundations, the reliability of which will be at issue in some cases. *Id.* at 150.

King proposes three possible additions to the blender as potential alternate designs: 1) a blowout plug; 2) a spring-loaded pressure relief valve; or 3) "a gasket housing with a notch or hole which would the gasket to deform and leak at a specific pressure." (Ex. B. at 21–22.) King asserts that these features have been used in pressure cookers for decades. (*Id.*) Defendants argue that King admitted that he has never tested this proposed pressure relief design using carbonated beverages. (Moving Br. at 8.) As such, Defendants argue that his opinion lacks sound methodology. (*Id.* at 10.)

Plaintiff maintains that King's method is reliable. (Opp'n Br. at 13.) Plaintiff does not dispute that King did not test the blender with carbonated ingredients but contends that King's pressure relief design is based on King's specialized knowledge as an engineer that excessive pressure, whether due to heat or carbonation, can be mitigated by a pressure relief mechanism. (Opp'n Br. at 14.) Plaintiff thus claims that King's conclusion is based on valid reasoning. King testified to this point, stating, "I did not test with carbonated ingredients. I don't see anything about the mechanism that tells me it would not vent pressure based on whatever the source of pressure is. Nothing about the mechanism tells me it would vent differently for carbonation versus temperature driven pressure." (Ex. H., T102:23-103:5.) King further testified that he has tested NutriBullet blenders using hot ingredients and excessive run times, and in those tests, he observed that a plug "vented pressure, and it seemed to be doing its job" and "would expect that with carbonated ingredients, it would also vent." (Ex. H. T91:8-12.)

In sum, King contends that pressure, however created, is pressure, and a pressure relief mechanism would be successful in mitigating that pressure. He further submits that the absence of such a mechanism featured on the NutriBullet600 amounts to a design defect. Defendants object to the fact that King has not tested a pressure relief mechanism specifically in the context of

10

blending carbonated ingredients. And this is critical, Defendants argue, because King admitted that the cause of the incident, based on Plaintiff's description, was likely not related to hot ingredients or over blending. (T79:7-25, T80:25-81:18, T84:11-18.). Plaintiff's solution is to allow Defendants to ask King about the perceived flaws in his proposed design during cross-examination at trial.

Ultimately, the Court is concerned by King's failure to test a pressure relief mechanism in the context of carbonated liquids, especially considering that King admitted during his testimony that the most likely cause of the pressurization in this instance was Plaintiff's inadvertent use of carbonated ingredients. *See Worrell v. Elliot*, 799 F. Supp. 2d 343, 349 (D.N.J. 2011) (explaining that "an expert opinion based upon speculation, possibilities or contingencies is inadmissible"). Nonetheless, the Court need not reach a final conclusion as to the reliability of King's opinion because, for the reasons set forth below, the Court finds that King's report does not fit the facts of this case.

### 3. Whether King's Proposed Pressure Relief Design Would Assist The Trier Of Fact

Beyond reliability, the Court is ultimately convinced that King's testimony raises more questions than answers. The Court finds that King's opinion as to an alternative pressure relief design does not amount to proof by Plaintiff of a "reasonable alternative design . . . the omission [of which] renders the product not reasonably safe." *Appleby*, 2005 WL 3440440, at *6. Based on what is known about the circumstances of the incident as stipulated by the parties, Plaintiff did not use any hot or carbonated ingredients and did not blend the ingredients for over one minute. In this way, King's opinion as to the three causes of over pressurization in a blender cup are simply not present in this case. His opinions require the Court, and would invite a potential jury, to consider alternative facts and hypotheticals that go beyond the facts of the case. Therefore, King's

11

opinion as to pressurization and the causes of pressurization lack the requisite fit insofar as they add more confusion than clarity and ultimately would not help the trier of fact to understand the evidence or to determine a fact in issue.

Accordingly, the Court will GRANT Defendants' *Daubert* Motion.

C.   **MOTION FOR SUMMARY JUDGMENT**

Defendants argue that the NutriBullet 600 is a "complex instrumentality" such that Plaintiff must offer expert testimony to support her design defect claim. (Moving Br. at 18.) Without King, Defendants argue that Plaintiff cannot prove causation. (*Id.* at 19.) Plaintiff maintains that causation in this case is straightforward and within the common experience of a jury such that expert testimony is not required. (Opp'n Br. at 18.)

Both the Third Circuit and the New Jersey Supreme Court have spoken on this issue. In *Kuhar v. Petzl Co.*, the Third Circuit recognized the New Jersey Supreme Court's decision in *Jerista v. Murray,* that

> explicitly overruled an earlier Appellate Division ruling that improperly read prior state supreme court decisions as: (1) requiring expert testimony in cases involving complex instrumentalities, and (2) making *res ipsa loquitor* unavailable without such testimony. 883 A.2d 350, 363–64 (N.J. 2005) (*overruling Jimenez v. GNOC, Corp.*, 670 A.2d 24 (N.J. Super. Ct. App. Div. 1996)). Instead, the Supreme Court of New Jersey explained that "[t]he question is not whether the instrumentality at issue is complex or simple, but whether based on common knowledge the balance of probabilities favors negligence, thus rendering fair the drawing of a *res ipsa* inference." *Id.* at 364 (citing *Buckelew v. Grossbard*, 435 A.2d 1150, 1157–59 (N.J. 1981)). In other words, the Supreme Court of New Jersey has "reject[ed] any reading of [its precedent] that imposes a categorical expert testimony requirement when a complex instrumentality within the exclusive control of the defendant causes an injury." *Id.*

*Kuhar*, App. No. 19-3900, 2022 WL 1101580, at *4 (3d Cir. 2022) (citing *Jerista*, 883 A.2d at 262–64). The *Kuhar* court applied the reasoning in *Jerista* to affirm a district court decision that

found expert testimony was required for a jury to understand the circumstances of a bolt's failure given the complexity of the "engineering design considerations; metallurgical aspects involved in plating the bolt; or the principles of physics at work on the bolt when in use." *Id*.

Here, the Court likewise finds that—although a lay factfinder might be expected to have some familiarity with a blender as a common kitchen appliance—an understanding of the relevant features of the blender's design and the physics of temperature and pressure surrounding the incident in this case calls for "scientific, technical, or other specialized knowledge." *Id*. In the absence of expert testimony, Plaintiff cannot provide that knowledge. Accordingly, Defendants' motion for summary judgment as to Plaintiff's design defect claim will be granted.[4]

## V.  CONCLUSION

For the reasons stated above, the Court will GRANT Defendants' Motion to Exclude Plaintiff's Expert and for Summary Judgment. An appropriate Order will follow.

Date: June 30, 2025

> s/ Zahid N. Quraishi
> **ZAHID N. QURAISHI**
> **UNITED STATES DISTRICT JUDGE**

---

[4] Plaintiff's opposition brief asks that, notwithstanding the motion for summary judgment, the Court preserve her claims for "strict liability – design defect claims, negligence claims, and breach of warranty claims." (Opp'n Br. at 19.) There are two impediments to granting this request. First, these claims were never pled in the Complaint. Second, even if they had been pled, it is widely understood that they were subsumed by the NJPLA. *See, e.g.*, *Port Auth. of N.Y. & N.J. v. Arcadian Corp.*, 189 F.3d 305, 313 (3d Cir. 1999) (dismissing negligence claim, because "under New Jersey law negligence is no longer viable as a separate claim for harm caused by a product"); *Green v. GMC*, 709 A.2d 205, 209 (N.J. Super. Ct. App. Div. 1998) (stating that "causes of action for negligence, strict liability and implied warranty have been consolidated into a single product liability cause of action" under the NJPLA); *Ramos v. Silent Hoist & Crane Co.*, 607 A.2d 667, 670 (N.J. Super. Ct. App. Div. 1992) (stating that "Legislature has consolidated the negligence, breach of warranty and strict liability theories for product liability claims" into a single product liability action under NJPLA).